# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 CR 295 |
| | ) | |
| v. | ) | |
| | ) | Judge Amy J. St. Eve |
| OTTRIEZ SANDS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

A one-count indictment charges Defendant Ottriez Sands with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Sands now seeks to quash his arrest and suppress all evidence recovered during the search of his vehicle, which he contends that law enforcement made in violation of the Fourth Amendment. (R. 22, Mot. to Quash.) For the following reasons, the Court denies Defendant Sands' motion.

## BACKGROUND

On February 3, 2013, the Chicago Police Department detained Defendant Sands after an officer observed a firearm in his hands while Defendant Sands was sitting in a gold Toyota Camry. An officer subsequently searched the Camry and seized a firearm from a hidden trap in the Camry. On April 10, 2013, the grand jury returned an indictment against Defendant Sands charging him with being a felon in possession of a firearm. Defendant seeks to suppress the firearm and quash his arrest.

On October 17, 2013 and November 6, 2013, the Court conducted a hearing on Defendant's motion to quash and suppress. During the hearing, Chicago Police Department Officers Perry Williams, Kevin Kilroy, and Matthew Darling testified. Defendant called Officers Williams and Darling as witnesses. The Court carefully evaluated the demeanor and credibility of the witnesses, including their body language, tone of voice, facial expressions, mannerisms, and other indicative factors. The Court summarizes below the testimony of the witnesses.

**I.     Officer Perry Williams**

Officer Perry Williams testified that in January 2012, an informant told him that an individual nicknamed "Trez" was selling marijuana out of a gold colored car. On February 3, 2012 the informant called Officer Williams and told him that Trez was currently selling drugs out of a gold Toyota Camry with tinted windows bearing Illinois license plate N622205 in the area of 71st and Paxton. The informant also gave Officer Williams a physical description of Trez. Officer Williams drove to that area and observed Defendant Sands sitting in the driver's seat of the described vehicle at 7102 S. Paxton. Officer Williams observed Defendant Sands from his surveillance vehicle parked approximately 30 feet away on the south side of 71st Street. Officer Williams' vehicle was facing away from the Camry, and he had to turn around and look over his shoulder to observe Defendant Sands.

After approximately fifteen minutes, Officer Williams saw an individual, whom police later identified as Katon Hunter, approach Defendant Sands at the driver's side window of the Camry. After a short conversation, Mr. Hunter and Defendant Sands engaged in what Officer Williams believed was a hand-to-hand drug transaction. Officer Williams observed Defendant Sands hand Mr. Hunter a small object, but he could not definitively identify the object. Officer

2

Williams testified that this entire exchange took place with Mr. Hunter standing outside the driver's door of the Camry. As Officer Williams conducted surveillance, another team of officers in an unmarked police vehicle, known as an "enforcement car," were positioned a few blocks away. Officer Williams used his radio to alert the enforcement car that he had observed a drug transaction and they should arrest Defendant Sands. After the enforcement car arrived on the scene, Officer Williams observed Mr. Hunter run into the Family Dollar store located on the corner of 71st and Paxton.

**II.     Officer Kevin Kilroy**

Officer Kevin Kilroy testified that he and two other officers, Matthew Darling and Nathan Gadzik, were riding in an enforcement car when they heard Officer Williams announce over the radio that he had observed a hand-to-hand narcotics sale at the intersection of 71st and Paxton. Officer Kilroy testified that he does not recall exactly what Officer Williams stated in his call over the radio. In response to the call, Officer Kilroy drove the enforcement car to the area of 71st and Paxton. Paxton is a one way street moving south and the Defendant was parked on the west side of the street with his vehicle facing south. Officer Kilroy drove the enforcement car to 71st and Paxton from the south, driving the wrong day down Paxton. Officer Kilroy testified that he parked his vehicle at an angle to, and approximately two feet from, the front bumper of the gold Camry. From this position, Officer Kilroy estimates that he was approximately 8 to 10 feet from Defendant Sands. As his vehicle approached, Officer Kilroy observed Defendant Sands sitting in the driver's seat and Mr. Hunter exit the Camry from the passenger seat and run into the Family Dollar store. Officer Gadzik pursued Mr. Hunter into the Family Dollar store.

After he observed Mr. Hunter flee, Officer Kilroy immediately exited his car and approached the Camry. When he got out of his vehicle, Officer Kilroy observed Defendant Sands trying to conceal a handgun in the open center console of the Camry. Officer Kilroy testified that he saw Defendant Sands move the handgun from his lap to the console with his right hand while holding a cell phone in his left hand. Officer Kilroy further testified that he observed this action through the front windshield of the Camry, which was not tinted, and that he had a clear and unobstructed view of Defendant given his proximity to the Camry. In addition, Officer Kilroy testified that he drew his firearm and ordered Defendant Sands to exit the Camry. Officer Kilroy detained Defendant Sands and then turned him over to another officer so he could search the Camry. After searching the vehicle, Officer Kilroy recovered from a trap area in the center console a .40 caliber Taurus Millennium model PT 140, Pro serial #SAV88905, nickel finish, containing 10 live rounds and 13 clear zip lock baggies containing marijuana. (R. 24 -1, CPD Arrest Report at 3.)

The Chicago Police Department Arrest Report does not specifically identify the object Defendant Sands attempted to conceal as a handgun. Rather, it refers to Defendant's attempt "to conceal a black and metal object in the open center console of his vehicle." (Arrest Rep., p. 2.) Officer Kilroy did not write the arrest report, but he testified that he told the officer who wrote the report that he saw a black and silver gun in Defendant's hand. Officer Kilroy did not review the report before it was finalized. Officer Williams wrote a supplemental report that indicated that Officer Kilroy had observed Defendant Sands with a handgun. Officer Williams testified that Officer Kilroy told him that he had observed a black and metal object that he believed to be a handgun, but did not indicate when Officer Kilroy told him this. Officer Kilroy's testimony indicates that "to [his] recollection" he told the reporting officer about the gun at the time of the

arrest. (Transcript of Suppression Hearing ("Tr.") at 21.) He also testified that he told Officer Williams that the defendant had a gun prior to the filing of the supplemental report. (Tr. at 39.)

### III. Officer Matthew Darling

Chicago Police Department Officer Matthew Darling also testified at the hearing. He explained that he was in the passenger seat of the enforcement vehicle that Officer Kilroy was driving on February 3, 2012. While in the vehicle, Officer Darling heard Officer Williams signal to the responding officers that they should move in and take down the suspect in the gold Camry. Officer Darling heard Officer Williams say that another person had approached the Camry, but he could not recall if Officer Williams specified which side of the Camry the individual approached. Officer Darling also heard Officer Williams say that a red Monte Carlo was parked adjacent to the Camry.

In addition, Officer Darling testified that after receiving the contact from Officer Williams, the enforcement vehicle drove the wrong way, northbound, down Paxton to arrive at Defendant Sands' vehicle. As they approached, Officer Darling observed a person standing near the passenger side of the Camry go into the Family Dollar store on the corner of 71st Street. When the enforcement vehicle stopped, Officer Darling exited and approached the passenger side of the red Monte Carlo, where a male subject was sitting. He further testified that he approached the Monte Carlo as a safety precaution to secure the scene. Officer Darling testified that as he approached and secured the red Monte Carlo he was not focused on Officer Kilroy and he did not have anything to do with the individual in the Camry. Officer Darling testified that he observed Officer Kilroy with his weapon out as he approached Defendant Sands in the gold Camry.

**LEGAL STANDARD**

"The Fourth Amendment protects citizens against unreasonable searches and seizures." *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013). "The jurisprudence of the Supreme Court makes clear that the primary bulwark against such conduct is the procurement of a warrant from a neutral and detached magistrate." *United States v. Whitaker*, 546 F.3d 902, 906 (7th Cir. 2008) (citing *Groh v Ramirez*, 540 U.S. 551, 575, 124 S. Ct. 1284, 157 L. Ed 2d 1068 (2004)). Accordingly, "[a] warrantless search is per se unreasonable under the Fourth Amendment subject to a few well-established exceptions." *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009) (citing *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009)). If law enforcement officials conduct a warrantless search, "the government must show by a preponderance of the evidence that the search fell within one of the recognized exceptions to the warrant requirement." *Id.* (citing *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000)). "One of the exceptions is the automobile exception." *Id.*

**I.  Automobile Exception**

Under the automobile exception to the warrant requirement, law enforcement agents may conduct a warrantless search of a vehicle provided they "have probable cause to believe the car contains contraband." *Richards*, 719 F.3d at 754 (citing *Carroll v. United States*, 267 U.S. 132, 160-62, 45 S. Ct. 280, 69 L. Ed 543 (1925)). Furthermore, "[w]here law enforcement agents have probable cause to search a vehicle, they may search all areas in the vehicle in which contraband or evidence of criminal activity might be found, including closed containers, packages, compartments, and trunks." *Zahursky*, 580 F.3d at 523 (citing *United States v. Ross*, 456 U.S. 798, 818-19, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982)); *see also United States v. Clinton*, 591 F.3d 968, 971 (7th Cir. 2010) (noting that "police may search 'any area of the

vehicle in which the evidence might be found' so long as there is probable cause to believe a vehicle contains evidence of criminal activity." (Quoting *Gant*, 556 U.S. at 346)).

The Supreme Court held in *Gant* that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 556 U.S. at 343 (citation omitted). Courts have upheld the validity of vehicle searches in this context. *See United States v. Smith*, 697 F.3d 625, 630 (7th Cir. 2012) (upholding reasonableness of vehicle search where armed bank robbery had just occurred, and arresting officers were notified about the robbery, about the description of the perpetrators, and that the robbers were to be considered armed and dangerous); *United States v. Slone*, 636 F.3d 845, 852 (7th Cir. 2011) (finding as reasonable vehicle search incident to arrest for conducting security or counter surveillance operations in a drug trafficking conspiracy).

## II.     Probable Cause

"A warrantless arrest satisfies the Fourth Amendment if supported by probable cause that the arrested individual committed a crime." *United States v. Freeman*, 691 F.3d 893, 898 (7th Cir. 2012). *See also United States v. Burnside*, 588 F.3d 511, 517 (7th Cir. 2009). As the Seventh Circuit has observed, "it does not take much to establish probable cause." *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010). "Probable cause exists when officers have a reasonable ground for belief of guilt." *Freeman*, 691 F.3d at 898 (quotations and citations omitted). Arresting law enforcement agents "must have more than a bare suspicion that they have the right guy, but they need not have enough evidence to support a conviction or even to show that their belief is more likely true than false." *Fox*, 600 F.3d at 833. "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was

7

committing, or was about to commit a crime." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) (citation omitted); *see also Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979); *Beck v. Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)).

Probable cause to arrest is a "practical, common-sense decision," *Burnside*, 588 F.3d at 517 (citation omitted), that "requires probability, not absolute certainty, that contraband or evidence of a crime will be found." *Zahursky*, 580 F.3d at 521 (citation omitted); *see also Abbott*, 705 F.3d at 714 ("probable cause deals not with hard certainties but with probabilities." (citing *Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983))). "In determining whether there is probable cause to search, law enforcement officers may draw reasonable inferences from the facts based on their training and experience." *Zahursky*, 580 F.3d at 521 (citation omitted). "The officer's belief that the arrestee was committing a crime need only be reasonable." *Abbott*, 705 F.3d at 714 (citing *Henry v. United States*, 361 U.S. 98, 102, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959)). Determining whether an officer had probable cause to arrest is a purely objective inquiry. *Id*. "The prosecution bears the burden of proving by a preponderance of the evidence that a warrantless stop is supported by probable cause." *U.S. v. Garcia-Garcia*, 633 F.3d 608, 612 (7th Cir. 2011).

**ANALYSIS**

**I.     Narcotics Transaction**

Defendant argues that Officer Williams did not have probable cause to signal to the enforcement officers that Defendant Sands had engaged in a narcotics transaction and the officers should therefore arrest him. Defendant contends that Officer Williams was only able to observe him exchange small items with Mr. Hunter, and that he could not positively identify

those objects as narcotics. (R. 25, Reply at 2.) Defendant further asserts that Officer Williams' version of the exchange between the Defendant and Mr. Hunter is "separate and completely different" from Officer Kilroy's and Officer Darling's accounts. Specifically, Officer Williams testified that the exchange occurred with Mr. Hunter outside of the driver's door of the gold Camry, while Officers Kilroy and Darling both testified that they observed Mr. Hunter on the passenger side of the Camry. Officer Kilroy stated that he saw Mr. Hunter sitting in and then exit the Camry, and Officer Darling testified that he observed Mr. Hunter standing near the passenger side of the car. Thus, Defendant argues, if a transaction took place giving the officers probable cause to arrest the Defendant, it would have taken place inside the Camry. Officer Williams would not have been able to observe an exchange inside the Camry, Defendant asserts, given the distance between Officer Williams and the Camry, and the difficulty of viewing anything through the Camry's tinted windows. Defendant argues, alternatively, that even if Officer Williams had observed the exchange of small objects, such an observation would not confer probable cause for an arrest.

Defendant's focus on what Officer Williams observed and conveyed to the officers in the enforcement vehicle, however, is misplaced. The relevant inquiry is not simply whether Officer Williams had probable cause to arrest Defendant Sands for the sale of narcotics. The relevant question is what Officer Kilroy believed and observed when he detained Defendant Sands and searched his vehicle.

## II. Arrest & Vehicle Search

Defendant argues that Officer Kilroy did not have probable cause to search his vehicle, and that the search was neither incident to nor contemporaneous with a valid arrest. In support, Defendant questions Officer Kilroy's testimony that he saw Defendant Sands holding a gun

9

through the front windshield of the Camry, and emphasizes that the other windows of the vehicle were tinted. Defendant also notes that the initial arrest report stated only that the responding officers observed Defendant Sands "trying to conceal a black and metal object in the open center console of his vehicle" and does not specifically refer to a handgun. (Arrest Rep. at 2.) Defendant contends that the single "black and metal object" referenced in the arrest report could have been Defendant's cell phone, which Officer Kilroy testified as having seen in Defendant's right hand. Thus, Defendant argues, Officer Kilroy could not have seen him holding a handgun and did not have probable cause to arrest him and search his vehicle.[1]

Probable cause to detain Defendant Sands and search the Camry existed here "because a totality of the facts and circumstances indicated at least a 'fair probability'" that the police officers would find evidence of the gun possession and that Sands committed a crime. *Clinton*, 591 F.3d at 971 (quoting *Zahursky*, 580 F.3d at 521). Officer Kilroy, the arresting officer, and his team had been conducting surveillance on Defendant Sands based on an informant's tip that Defendant was selling marijuana out of his gold Toyota Camry. Officer Kilroy heard from Officer Williams, who had been conducting surveillance, that Defendant Sands had just engaged in a hand-to-hand narcotics transaction while sitting in his gold Camry. When he arrived on the scene, Officer Kilroy observed Katon Hunter run from the passenger side of the vehicle into a nearby corner store.

Although Officer Kilroy's testimony regarding where Mr. Hunter was positioned conflicts with Officer Williams' account, Officer Darling's testimony corroborates Officer Kilroy's version. The officers were credible during their respective testimony. As the Seventh

---

[1] Defendant also argues that the arresting officers failed to follow police policy and procedures and allowed the Defendant's vehicle to be destroyed by the Chicago Department of Streets and Sanitation. Defendant claims that the destruction of the vehicle has hampered his ability to investigate his defense. Defendant stated that he "reserves the right to file a motion to dismiss for a violation of [his] due process rights pursuant to *California v. Trombetta*." (Reply at 6, fn. 2.)

Circuit teaches, "[t]estimony is not incredible as a matter of law … only because the witness may have been impeached by certain discrepancies in [his] story, by prior inconsistent statements, or by the existence of a motive to provide evidence favorable to the government." *Freeman,* 691 F.3d at 900 (citations and quotations omitted). Moreover, after Officer Kilroy exited his vehicle, he credibly testified that he observed Defendant Sands holding a handgun in his right hand and trying to conceal it in the center armrest console in his vehicle.

Defendant's argument that Officer Kilroy was not credible because his testimony conflicts with the arrest report fails. Officer Kilroy credibly and unequivocally testified that he saw Defendant with a "gun in his lap on his right thigh, remove it – put it into the armrest." (Tr. at 14.) Defendant challenges Officer Kilroy's observation based on the tinted windows on the side of the Camry. He contends that Officer Kilroy could not have observed the firearm through the dark tinted windows. Officer Kilroy, however, did not testify that he saw the firearm through these side windows. Instead, he credibly testified that he saw the firearm through the front windshield. Defendant does not contest that the front windshield was not tinted. The fact that Officer Kilroy parked the enforcement vehicle immediately in front of the Camry corroborates his testimony, because he would have been looking at the front of the Camry when he exited the enforcement vehicle.

The arrest report, which Officer Kilroy did not author or review in advance, reflected that "as [the reporting officers] approached the listed vehicle, SANDS, Ottriez was observed trying to conceal a black and metal object in the open center console of his vehicle." (Arrest Rep. at 3.) The description of the object in the arrest report is consistent with Officer Kilroy's testimony, given that the firearm fits this description. Moreover, a police report "is not an all-encompassing account of exactly what was said and done during an encounter between a law enforcement agent

11

and a private citizen, but rather is a summary of what occurred." *Freeman*, 691 F.3d at 900-01 (citations and quotations omitted). Additionally, Officer Kilroy did not author or review the report for accuracy, thus its impeachment value is limited. Based on these facts, Officer Kilroy had a reasonable belief that the defendant had engaged in a narcotics sale and was in possession of a handgun. Accordingly, he had probable cause to arrest Defendant Sands. In addition, based on his observation of the firearm, he had authority to search the vehicle because he had a reasonable belief that he would find the firearm. *Smith*, 697 F.3d at 630. As such the Court denies Defendant's motion to suppress and quash.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to quash.

Date: November 18, 2013                    **ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**